May it please the Court, Julian Poon on behalf of Appellant Rosemont Copper Company, I'd like to reserve six minutes for rebuttal. This Court should reverse with instructions to vacate the designation of the 62,000-acre acres of critical habitat at issue and remand to the agency to reconsider, just like the Tenth Circuit did less than two years ago with respect to the same final rule from the same agency as to the same species in the New Mexico Farm and Livestock case we cited. And this Court should do so because the agency and the District Court applied the wrong legal standards and failed to follow the process required by law. Both the Service and the Center now admit that the statutory term essential means indispensable or necessary, as we've been saying all along, even though they rejected and argued against that interpretation below and the District Court agreed with them, ruling that essential means something less than indispensable or necessary. But now they admit that's wrong. And so, therefore, this Court should reverse on that ground alone under its decision in Natural Resources Defense Council versus Forest Service. This Court should also reverse because the agency failed to follow the two-step or stepwise process mandated by its own regulations. First, the Service arbitrarily and capriciously designated the northern Santa Rita's portion of Unit 3 as well as subunit 4B as, quote-unquote, critical habitat essential to the conservation of the jaguar species. The Service clearly didn't use the correct legal standard for essential, and its appellate counsel's post hoc rationalizations and attempts at reinterpreting the final rule on appeal do not suffice. As this Court has held, its review of an administrative agency's decision begins and ends with the reasoning that the agency relied upon in making that decision. And that reasoning and decision make clear that the Service used some lesser, watered-down, shifting definition of essential. They never come out and say what it means, even though we repeatedly press them on that in both the agency level and the District Court level. But we can infer from several statements in the record that they understood it to mean something just merely beneficial or contributes to, as Judge Hart said in New Mexico Farm and Livestock, as to the same final rule, they construed it just to mean merely convenient or helpful. The Service told the District Court that Rosemont's dictionary definition of the statutory term essential was, quote, wrong, that it could make the determination of what is essential on a case-by-case basis as it pleased, and that it's of no import, quote, that the Service did not define essential specifically in the final rule. And the District Court agreed with all this in upholding the Service's challenged designations, specifically finding that Rosemont's definition of essential as indispensable was, quote, not in accordance with the intent of the ESA, and that a, quote, unquote, more generous but unspecified definition was appropriate. What would they have to say in the final rule, in your view, to establish that this critical habitat or this area, this acreage, was essential for conservation of the Jaguar? To begin with, Your Honor, they would have to make clear that they understood essential to mean necessary or indispensable, as we repeatedly pressed that point and the other set repeatedly argued against, and not just saying that, but then evincing in its analysis that that was the understanding it was using. But if we look at the record, just three pages, for example, ER-248, ER-282, and ER-217, the Service is repeatedly using a different standard that the District Court upheld its decision on, which is merely, quote, beneficial or contributes to, and that's not the standard, as they admit now, repeatedly in their briefs, both appellees. So that's not exactly answering my question, because the final rule says it's beneficial, it contributes, and therefore it is essential. So what was wrong with them saying that and saying it's essential? What type of findings would they have had to make in order to establish that the acreage was essential? They would have to, to begin with, before the findings, the central flaw is the use of the wrong legal standard. They are construing essential to mean beneficial or contributes to, but that's not what essential means. Okay, so what is the standard? What would they have had to find about the habitat or the acreage? They would have had to have found that it was indispensable or necessary to designate the northern Santa Rita's portion of Unit 3 and subunit 4B that is necessary or indispensable to the recovery or survival of the species. And there's nothing like that. You can look through the 100 plus pages of the final rule. I've read it. What does indispensable mean? Because indispensable is a synonym for essential, right? So they could have said it contributes, it's beneficial, therefore, it's indispensable. What would they have to find? Would they have to say, but for designating this land critical habitat, the jaguars could not have recovery? Is that what you're asking? Precisely, Your Honor. That's the kind of finding they would have to make. That you cannot, it's dispensable. It cannot be done without. That this is the sine qua non, if you will, of the species, the species writ large. All 30,000 jaguars worldwide, 30,000 plus. You know, there's only been one sighting of it in the area at issue in the past decade. And there's, so we're talking one out of 30,000, that somehow this area is so critical, or as the Supreme Court said in Weyerhaeuser, indispensable. That you can't do without it. The jaguar simply cannot, the jaguar species simply cannot recover from its purported, threatened or- Are you challenging the, I think I know the answer to this, but I want to make sure. You're challenging the final rule, clearly. Are you also challenging the biological opinion that says that this northern recovery unit is essential? Because they basically make that argument, that this northern recovery unit, which is where the land we're talking about is part of it, it's not all of it, but it's a piece of that. They say in the biological opinion, as my understanding, this section is important even though it's not a core area. Because it provides some functions that are necessary for the species. Are you challenging that? Because in the final rule- Yes, Your Honor. They say, in the final rule when they're saying this is essential, they're saying because we previously determined that this northern recovery unit is essential. Yes, Your Honor, but let me clarify, we're only challenging the portion of the NRU, the Northwestern Recovery Unit, that affects the 62,000 acres we're challenging. So we're not challenging the entire NRU, most of which is in Mexico, and doesn't affect our plan operations. But you are challenging that fundamental premise of that this unit at all is really important. Yes, Your Honor. I mean, again, the emperor has no clothes. If you look at the specific sites discussing the NRU, it's this circular, conclusory reasoning. They say, well, why is the NRU important? They start and finish with the wrong question, and assume the conclusion they seek to reach. So for example, at ER 492 in the biological opinion, they pronounce, by definition, the NRU is essential to the recovery of the species range-wide, end quote, no explanation. And then they announce at ER 747, they instruct their panel of experts, the jaguar recovery team, to, quote, focus your efforts and resources on conservation of the jaguar in the northwestern part of its range, and, quote, address the actions necessary to conserve jaguars in the northwestern portion of their range, i.e. within the NRU. That was already the mandate that their panel of experts was given. They weren't asked the right question, which is, is the NRU, which represents less than 2% of the jaguar's total population, and well less than 3% of the jaguar's total range, this is at ER 731, 766, and 724, that that's somehow indispensable, that you cannot do without it, in order for the entire jaguar species worldwide, most of which live in Brazil and believes that they somehow cannot recover from their purported threatened or endangered species status without those particular areas where, again, there's only been one jaguar seen that they can point to in the entire time period at question. There hasn't been any evidence of a breeding population in the United States. The last record of a female and her cubs in the United States was from well over a century ago in 1910, as the service itself found, 1963, the last time a female was seen in the United States. So the service never provided any reasoned explanation, as this court required, for example, in Garcia v. Holder, for why designating Units 3 and 4B were essential. And I would challenge my friends on the other side of the aisle to point you to any non-circular or non-conclusory explanation of why it is necessary, why you cannot do without designating these specific areas, the northern Santa Rita's portion of Unit 3 and subunit 4B, in order for the species to recover. As Rena would point out, just eight years before the challenge final rule here, the range of the jaguar in the United States is not enough area to provide for the conservation, i.e. recovery of the jaguar, or even make a significant contribution to the conservation of the jaguar, and cannot be defined as essential to the conservation of the species. Any conservation measures will need to be implemented in Mexico, in Central and South America. This is at ER 783, and this is the service talking, not Rosemont. So I do want to, in my topside argument, cover the two-step argument as well, unless the Court has further questions on the arbitrary and capricious designation of these areas as essential. I would just briefly note, as we set forth in our briefs, that the agency also arbitrarily and capriciously failed to follow the two-step process mandated by its own regulations for designating unoccupied areas as critical habitat. The agency has made clear in its own published official notice-and-comment rulemakings that the 2012 regulation that's at issue here, that it always meant and always required a stepwise process, and that that's also the best and most natural reading that follows from the text of the regulation, as the Tenth Circuit recognized in overturning. And if both of these standards mean the same thing, which is what we said in Bear Valley, why do you need a two-step process? Well, they don't mean the same thing, with respect, Your Honor, as the agency just found. I didn't say that. It was Bear Valley that said that. Yes, I understand. They're identical standards. They're saying the same thing. I mean, we didn't talk about it in the context of procedural steps, but we said they mean the same thing. So why do you need to step through a two-step process? Because there is a certain discipline involved, say, sitting around a kitchen table. Can we make due with just designating the occupied areas of the habitat before we then expand out to all this unoccupied, concealed unoccupied areas and designate all that, impose all the restrictions of the ESA on all that other critical habitat? There is a certain discipline involved in that, as the agency itself recognized under two different presidential administrations in 2016 and the 2019 rulemakings, where they specifically talked about the need to go through a step-wise process. That is so much, as I'm sure Your Honor well knows, is so much of administrative law is the process that's involved. Show your work. Connect the dots. Show you can't make due with this before you go to this. And so there's no — if they want that kind of deference, they have to be able to show why that is. And once again, we have the agency failing to show its work, failing to justify its decision with adequate reasons, and failing to follow the required process. And I think under a decision Your Honor authored for the Court last year in Silva v. Garland, 993 F3705, Your Honor wrote for the Court that a subsequent agency construction, as we have here in the 2016 and 2019 rulemakings, trumps prior circuit precedent, i.e., this Court's 2015 decision in Barrett Valley under the Supreme Court's decision in Brandeis. And so I'm struggling a little bit with, is this a Brandeis case? Because we don't have a subsequent agency construction so much as the agency just decided to delete some language. And there's an inference that can be made in what they said about what they're doing when they deleted the language. It's not like they're interpreting the language that was in effect at the time that we care about. They deleted it. Your Honor, with respect, I'm not sure it's simply a deletion. If I could point the Court's attention to the preamble statement. No, I understand that there's a preamble statement of what they thought the deletion was going to be. But nonetheless, it's not exactly an interpretive exercise in terms of this is what this means. They deleted it. They amended their regulation to delete the language that controlled at the time we care about. Well, it's far more of an authoritative interpretive exercise within the meaning of the Supreme Court's decision in Kaiser than anything the service has offered here, which are merely convenient litigation positions through the mouth of their appellate counsel. The Supreme Court in this Court has repeatedly rejected that. But when we have our clear statements, it went through notice and comment rulemaking, and the agency told us under two different administrations what they understood the operative regulation to have always meant since at least 1984. I'm not sure that it's that clear, at least in 2016, because they say, for instance, that our intent is to codify what we've been doing for many years. So that's not exactly saying that we're now going to be doing something new, but rather that we're going to be doing what we've always done. And there's quite a bit of that language in the 2016 rule. So I'm not sure that it's as clear as you're suggesting. If I may, and I would like to reserve some time for rebuttal, but with the Court's permission, I'd just like to read two quotes from the 2016 and 2019 rulemakings. I think it really illustrates this is something much more than just a deletion. It's an actual interpretation. An authoritative construction satisfies all the Kaiser criteria, the character and context of the regulation. It's authoritative. It's not in the context of litigation. And they said in 2016, in rewriting the rule to specifically call for the kind of unitary one-step this Court suggested in Bear Valley, the agency said that, quote, a rigid stepwise approach, i.e. first designating all occupied areas and then, only if that is not enough, designating essential unoccupied habitat. That was what the agency said in 2016. And in its 2019 rewriting of the regulation to match explicitly and call out the two-step that we now call for, the currently operative regulation, the agency explained that in 2016 we changed the stepwise, quote, we changed the stepwise approach we have been using since 1984, but we're now restoring the requirement that the Secretary will first evaluate areas occupied by the species. So this is, end quote, this is a textbook case for Brand X, including under Your Honor's decision in Shahinian, your concurrence, and every circuit to have looked at this case, the issue of whether Brand X applies to agency interpretations or regulations, including the third and federal circuits. I would like to reserve my time for rebuttal. Thank you, Your Honors. All right. We'll hear from the other side. I believe Mr. Burney is up first. Yes, thank you. Good morning, Your Honor. May it please the Court. Andrew Burney on behalf of the Fish and Wildlife Service. The district court's judgment upholding the challenge critical habitat designation should be affirmed. After a federal court set aside the service's previous decision not to designate jaguar critical habitat in 2009, the service assembled the Jaguar Recovery Team, a binational group of experts from the United States and Mexico, and it based its designations to the greatest extent possible on that group's scientific and technical recommendations. The designations are carefully tailored to capture only the small subset of lands that are truly essential. I want to get to a few things Mr. Poon said. Before I get to that, one thing I think it's important to emphasize at the outset is just how comparatively small the designations here are. So Mr. Poon emphasized how comparatively small the number of jaguars are in the NRU and in the United States portion of the NRU compared to the rest of the Americas. But the converse of that is that the NRU itself is about one and a half percent the size of the PARU, and the designations within the NRU here are about 1.4 percent of that 1.5 percent, just about one twenty-five hundredth of the jaguar's total range. And the service made a number of conservative assumptions in designating those small patches of land. For those occupied areas that it determined were occupied and essential, it included only those areas, it included all seven of the PCEs for the jaguar, even though this court has specifically held that that kind of a restrictive approach is not required. In determining occupancy, it only considered undisputed Class I records, and it further excluded several Class I records whose validity had been called into doubt. I also think it's important to emphasize, the court probably already knows this, but I think it's important to note that in terms of the character of this action, this is not a direct regulation of private parties. Critical habitat designations only affect, serve as a brake on what the government can do in some of its discretionary decisions, and it didn't even prevent the approval of the Rosemont Mine. The determination was made that the mine would not adversely affect critical habitat. Now, the district court... Could I turn you for a moment to the standard that was applied, since that's their key argument? Certainly, Your Honor. I looked through the final rule as much as I could, to some extent, and didn't see anything there that tracked what opposing counsel says is necessary for an essential determination. In other words, nothing that I saw in the final rule said, but for this designation, the jaguar species will not recover. So my question is, is there something like that in the final rule that I missed? And if not, why is that not necessary for an essential, that it's essential for conservation finding? Well, Your Honor, I don't think there is, I don't think there is but-for language. The service explained in detail why this is essential to the conservation of the species, and I'll get to that. Could you hold on for a moment? Certainly. So, do you agree there's no language in the final rule that says, without this, if you don't like but-for, without this designation, the jaguar species will not recover. Do you agree there's nothing like that in the final rule? I think a finding, they found it essential to the conservation of the species. I agree that there is no but-for language, Your Honor. Thank you. But just to get to the legal standard, though, but I think when Mr. Poon continually emphasizes the statutory term essential, though, that just begs the question of essential to what? The ESA explained... It says recovery, right, conservation, essential for a process by which the species recovers to a point such that ESA protections are no longer necessary. So when you interpret essential in that light, it's essential to a substantial process of improvement for the species. And so that can't mean what Rosemont wants it to mean. It doesn't mean just what is essential for the jaguar to survive. It doesn't mean the existing habitat that the jaguar currently uses, which is a construction this court rejected. It means... Is that written down somewhere? Do you have that in a regulation or is that in your final rule that you interpret essential to mean, in this context, you mean essential to a substantial process for improvement? Oh, no, I'm sorry. When I said substantial process of improvement, Your Honor, I was using that as a gloss, I think a correct gloss, though, on what the ESA standard was. It defines conservation as all methods and procedures such that listing of the species is no longer necessary. So you have a species that is listed as endangered and the statute requires the service to designate critical habitat to recover the species to the point where it no longer needs to be protected by the ESA. So when I said substantial improvement, that's simply what here were essential. I will, under that framework, I'll just start with Unit 3 and then subunit 4B. This is not circular at all, as Mr. Poon says. First of all, for Unit 3, there were three justifications. First of all, that they had exhibited recent jaguar occupancy. If you look at page 222 of the excerpts of record, I think there were 14 separate sightings of a jaguar in 2012 and 2013 in the Santa Rita Mountains where the Rosemont Mine was to be built. So recent jaguar occupancy, which I think is itself not unimportant. The occupancy question is technically a question of occupancy in 1972, given the strange facts of this case, but recent jaguar occupancy exhibited all of the PCEs for the jaguar. So you have jaguars in the area with all the PCEs for the jaguar and contributes to the possible range expansion of the NRU, which is itself essential for the species. And I want to speak to that a little more specifically, Judge Forrest, because you asked about that. It's not just the NRU is important because it's important. The jaguar recovery team explained specifically why, I think this is on page 748 of the excerpts of record, why it's critically important to the jaguar's recovery throughout its entire range. First of all, it contains ecological conditions that are found nowhere else in the jaguar's range, arid climate. That's important as a matter of evolutionary diversity, because jaguars, individuals of the species who are able to survive and thrive in these conditions, may well have characteristics that are different than individuals in other parts of the Americas. So I see how, in the final rule, I thought was very expansive in explaining why these areas were for jaguars if there were any. But that didn't seem to get to the question or the issue as to whether these lands had to be designated or otherwise the jaguars would not be able to recover. So I think if you could explain why the fact that the lands are good for jaguars, which I don't think is disputed, I mean, the fact that they have the seven PCEs or whatever, however that's terminated, how does that make it essential to jaguar recovery? Because the fact that they have these features and the fact that they've been observed in this area illustrates why it opens these areas as a possibility for range expansion. And so if they weren't there, I mean, you sort of have to say, unless you don't agree with this definition of essential, you sort of have to say, without them, we understand that these areas are good for jaguars. Without them, the jaguars cannot recover. So can you just bridge that gap for me? I'm sorry, Honor. Could you repeat the question? Yes. Without these areas, which are undisputedly good for jaguars, the jaguar species will not be able to recover. How do you bridge the gap between good for jaguars and will not be able to recover? I think you bridge the gap because range expansion is critical for reasons the jaguar recovery team explained. And also in terms of the characteristics of this specific species, this is why essential has to be a fact-specific question. Jaguars are a species that not only require expansive open spaces, but as the jaguar recovery team explained, small isolated populations tend to do very poorly in terms of persistence. But their persistence improves when they are connected to larger groups. Everyone understands that the jaguars in this area are migrants from the core areas in Mexico. And the service, as well as the jaguar recovery team, explained why it was critically important that these relatively small sets of lands be designated to allow for range expansion, ultimately leading to recovery of the species. I just want to speak briefly, if I could, to the Tenth Circuit's decision. For the reasons we explained in our brief, we think that's just categorically inapplicable because the Tenth Circuit really said a lot in this case that supports our view. They based their decision solely on this regulatory interpretation analysis that I think, as Your Honor's questions indicated, is just squarely foreclosed by Bear Valley. And I clearly correct. Even the 2016 statements were more of a question of sequencing. They didn't say the service has to make some threshold finding. Once the service finds in detail that a particular area is essential to the conservation of the species, it necessarily finds that anything less than that would be inadequate. Why is that so? Because the language of the regulation, in effect, at the time that we care about, specifically used this inadequacy term. So you're basically saying, all we have to say, all we have to use is the word essential, and we necessarily are covering the inadequacy. If that's true, why does the regulation say anything at all? Why doesn't, why don't we just have the language of the statute? Well, Your Honor, I mean, I think, I think that's, to be fair, Your Honor, I mean, I, that's not just what I'm saying. That's, I respectfully submit the Court isn't writing on a blank slate on this question. That's what Bear Valley said. And I do think that, that that decision on this point binds this Court, because we don't think, for all the reasons we set forth in our brief, the service's 2016 statement changes anything. I think it would be very odd to say that an agency could effectively change the meaning of a regulation in a way that would retroactively pass, affect past decisions by, in the course of changing that regulation. Why would it be a retroactive change? Well, I mean, this, Because what they did, again, I mean, this, I find this very confusing in terms of thinking through the Brand X analysis, because I don't understand how retroactive, retroactivity would necessarily be implicated here, when what we have is not a new interpretation. It's a, let's take this provision out, because we won't want to deal with this two-step thing that we created before. So that all suggests that it's not retroactive application. It's what we did before was two steps, and now we only want to do one. Well, I don't want to eat too much into Ms. Melton's time. I mean, the one thing I'll say about that is that the, even in 2016 when it changed it, it simply, it didn't say the service had to make any particular statement. And even the Tenth Circuit, in its decision, if you look at footnote 17 of their decision, we think the Tenth Circuit was wrong, said, referring to subunit 4B specifically, that by explaining specifically why that unit was essential to the conservation of the species, we read that as them saying that that satisfied even that standard, which, again, we would say conflicts with Bear Valley. I see, I don't want to. I have a follow-up question, and maybe Judge Okuda will give you guys a little bit more time, but. So I understand that you don't think that we should get to the Brand X analysis, and that Bear Valley controls. If we disagree with you, is it your position really that this doesn't matter, doesn't mean anything? So I think I have several things. First of all, we think this argument is forfeited. That's one. Bear Valley, two. If the court gets beyond both of those things, we don't think the 20, we don't think the, we don't think Brand X can apply to, apply in that sort of context. But even if it did, I don't think even the 2016 statements conflict with anything the service did here. Nothing in that said. The question is, does those 2016 and 2019 actions conflict with Bear Valley? What's that? Do they conflict with the understanding that Bear Valley established? I don't, I don't think so, Your Honor, because I don't think that 2016 decision says that the service has to make any specific findings. It's talking about a sequencing, sequencing question. What lands the service, what lands the service considers first and second. But if we look at the decision and we can't tell any sequencing occurred. Um, I, I, well, I would still say that, I would still say that Bear Valley says that by, at least in this context, by giving specific reasons why specific lands were essential, that that satisfies the regulation. Okay. Thank you. Thank you. Good morning. May it please the court. My name is Allison Melton. I'm arguing on behalf of the Center for Biological Diversity that Pelley's in this case. Um, I will, we'll start where, um, Mr. Bernie left off, which is just that I think that this court's decision in Bear Valley is really all we need to move to for this, um, second question that Rosemont raises. Here, this court directly dealt with a two-step argument and rejected it. We didn't address procedure at all. I mean, it, it struck me that we often make agencies go through duplicative and redundant, um, decision making. And all the, um, the Bear Valley said was, um, these are essentially the same determination, which I think is probably correct. But that doesn't mean that the agency is relieved of the sequencing, as Mr. Bernie said, does it? So, I think there's a slight, uh, clarification I would like to make with Bear Valley. Um, when we look at that case, I think the, the way that the courts looked at it was not necessarily that occupied and by designating unoccupied critical habitat, that itself was a determination that occupied habitat alone was not sufficient for the recovery of the species. And it's that recovery of the species that's really the touchstone here. So, it's a redundant decision, but that doesn't mean, because we said it's essentially the same thing. It's two sides of the same coin. That's probably correct. But that doesn't say the agency doesn't have to go through the procedural steps that it's laid out by regulation. That seems like a different issue. Um, I'm sorry. I don't know if I'm following correctly. But I, I think the, what we really get down to though is, is this question of what is essential for the species? And so, the question here is what's essential for the jaguar? And that includes habitat that allows the normal demographic function of this species. So, it can recover. And so, it no longer needs the endangered species protection in the U.S. With that, I would like to, to turn to talking specifically about the habitat here that was protected for the jaguar. And the jaguar is a native species to the United States. It has current use in the Southwestern United States in Arizona. In fact, at the Rosemont Mine site, in and around it, in those northern Santa Rita mountains where Rosemont is contesting this critical habitat determination, there was a jaguar there during this rulemaking. It was there and documented so frequently with photographic evidence that it led the Forest Service to conclude that it was likely this species had, pardon me, it was likely this animal had developed a home range in those mountains. This animal was also spotted in the Whetstone Mountains before it was found in the Santa Ritas. And the Whetstone Mountains are to the east. Those are connected to the Santa Rita Mountains by subunit 4B, which is the other area that Rosemont contests. Although we do not have definitive proof. Tell me where in the, in the rule, the service explains why this more recent sighting means that there also would have been jaguars in that area in the, in the 70s. Yes. So what I think is, is really unique with the jaguar is generally we have critical habitat designations being made in close proximity to when species are listed. Here, the jaguar was listed originally in 1972. And the species had been hunted, extricated, largely unfortunately by that time, by human activity. And so at that time it was particularly rare. We also weren't looking for the species. And so that's why the service in the rule does talk about how it was using recent occupancy to help. But I understand all that. What I'm, what I'm trying to understand is where the service explains what the, what exactly the relevance of this, of this more recent sighting is. How, how can we connect the dots? I understand that there's a lack of, a lack of data, but where, where are the dots connected? I think the, the relevance is that this really shows that this is suitable habitat for this species. It is able to live in this area. It is able to be there for significant amounts of time. And it's part of its historical range. That's a different question than whether the, the territory was actually occupied. Is that right? So yeah, there's kind of two discussions of occupied. There's a kind of occupied and occupied as there was an animal there living at, in the Northern Santa Rita Mountains during the time the rule was promulgated. And then occupied in the technical legal sense of determining, determining occupancy. Right. And that is generally looked at the time of listing. Here, the service did, because the species was so rare, we weren't looking for it in 1972, determined that it was appropriate to be looking at the current occupancy as in there's jaguars in this location at the time that would be able to buttress that. Doesn't that completely undermine the statutory requirement that occupancy is determined at listing? I think the, the challenge is that this is a really unique situation. Generally, these do happen in close proximity. The problem here was that nobody was looking for them. They were largely hunted and poisoned to nearly the extradited, to where they were of the best available science. And I see that I am at my time just about, I would just like to say that indispensable doesn't answer the question. We have to look at what is necessary for the species recovery. Thank you. We have some time for rebuttal. Three points, if I may, Your Honor. Number one on essential. You've just heard the government concede to you in open court that there is nothing in the final rule that, quote, bridges the gap between beneficial and essential. There's nothing that shows that but for this species, Mr. Bernie has told you on behalf of the government that but for this designation, the species can't recover. And so under this court's binding precedent in NRDC versus Forest Service, we cannot say that the admitted error here, quote, clearly had no bearing, end quote, on the agency's decision. So reversal is automatically acquired just based on that. Second, on the regulation, I think on Bear Valley, the, pardon me one second, I would point to how Judge Forrest and Judge Ikuda both recognized that there's no evidence anywhere in the final rule of the requisite sequencing here, whatever you think about the similarity of the two steps or not, and that that's required. And they admit they can't point, they've once again conceded there's nothing in the final rule, as Judge Thomas also recognized, that evinces any evidence of this kind of requisite sequencing. So once again, reversal is required to send this case back to the agency to be done correctly with a vacature of the designation and the proper legal standards and the process required by law to be applied here. And I think tellingly in response to Judge Thomas's questions and Judge Forrest's questions, the center and I guess implicitly the government as well have conceded that there is nothing that once again connects the dots or explains how an alleged recent sighting 40 plus years later after what they admit is the relevant time here defined by statute as occupancy at the time of listing, they admit that. And then they just say, oh, well, it's a curious circumstance where we meant to designate it as of 1972, but we never actually got around to doing what we had to do to properly designate it until 1997. And I would submit to your honors, that's on the service. The service slept on things for two decades. And so now they want a bypass or work around the statutory requirement and there's just a complete absence of evidence to support these assertions. They're asking you to blow aside what the statute requires, what the reg clearly requires, and there's just no support for what they're asking for here. And I think reversal is mandated by precedent with vacature for reconsideration by the agency once again to get it done right this time, unless this court has any questions. Thank you, your honors. We thank both sides for their argument. The case of Center for Biological Diversity versus United States Fish and Wildlife Service and
judges: IKUTA, FORREST, THOMAS